**William M. BRANDERHORST et al.,
Appellees,**

v.

**IOWA STATE HIGHWAY COMMISSION,
Acting on Behalf of the STATE of
Iowa, Appellant.**

**No. 55164.**

Supreme Court of Iowa.

Nov. 15, 1972.

Richard C. Turner, Atty. Gen., Asher E. Schroeder and Donald L. Hoeger, Asst. Attys. Gen., for appellant.

Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellees.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, HARRIS, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal relates to the authority of the Iowa State Highway Commission to relocate the channel of a creek on private land.

Plaintiffs Branderhorst and Nyemaster (landowners) own a farm in Jasper Coun-

ty, Iowa. The farm is bounded on the southeast by Iowa Highway 14, on the southwest by the Skunk River, and on the northeast by Cherry Creek (except for a small parcel east of the creek).

The river runs generally southeast and the creek runs generally south. They pass under the highway at separate bridges about a quarter-mile apart, and the creek runs into the river at a point about 1,500 feet south of the highway. Years ago both streams ran meandering courses, but in the intervening time they were straightened considerably. At all times, however, they ran under the highway at separate bridges and joined south of the highway, so far as is known. The creek sometimes overflows when the river does not. At those times the creek water does not cross the landowners' farm to the river but eventually passes down through the creek bridge.

The Commission desires to rebuild the highway, change it to limited access, and, for reasons of economy and safety, eliminate the creek bridge. The latter it proposes to do by changing the confluence of the two streams from the present point to a point on the landowners' farm north of the river bridge. The Commission would turn the course of the creek generally southwest and run it across the farm for about a quarter of a mile, parallel to and approximately 370 feet northwest of the center of the new highway. The relocated channel would be nine feet deep, 20 feet wide at the bottom, and 56 feet wide at the top. The landowners would be left with a tillable parcel of land between the new channel and the highway, which they could reach only by going around on roads for a distance of about five miles. In addition, they would lose the productive land in the new channel, and their land on both sides of the new channel would be subject to overflow from relocated Cherry Creek.

The Commission sought and obtained permission from the Iowa Natural Resources Council to relocate the creek. The Council's order recited, however, that the Commission "shall be responsible for obtaining . . . such lands, easements and rights-of-way as are required for the construction, operation and maintenance of the approved works." For the purpose of effecting the change in the channel, the Commission condemned a temporary easement, to expire on completion of the relocation but not later than December 31, 1974. The landowners appealed to district court from the award of the condemnation jury; that appeal is pending.

In such state of affairs, the landowners commenced the present separate suit to enjoin the Commission from changing the channel of the creek. After trial, the trial court issued a writ of injunction. The Commission appealed.

At the outset, the Commission contends as a factual matter that it is not proposing to change the "natural course" of Cherry Creek. Our examination of the evidence convinces us that this contention is without foundation. From time immemorial, the two streams have flowed under the highway at separate bridges and have joined below the highway. The Commission would change this and bring the streams together above the river bridge. Plainly, the Commission proposes to change the "natural course" of Cherry Creek.

That fact gives rise to the substantial legal problem in the case. Can the Commission lawfully change the channel of Cherry Creek?

■ This court has stated several times that it will not substitute itself for the Commission in the planning and constructing of highways. The legislature has placed that function with the Commission. The court recently said that "the commission's powers in planning, building, and maintaining highways are broad and plenary; that the commission is an arm of the state; and that courts should not interfere

with its activities unless the commission acts in derogation of its statutory authority or unless fraud or illegality is shown." Rosendahl Levy v. Iowa State Highway Comm., 171 N.W.2d 530, 533 (Iowa). Thus we have no concern with the wisdom of the proposed change in Cherry Creek. Obviously, no fraud exists. The problem comes down, therefore, to whether the Commission is acting illegally or in derogation of its statutory authority.

■ The initial question is whether the Commission's power of eminent domain extends to the acquisition of an easement for relocation of the channel of a stream on private land. The Commission's power to condemn, so far as material here, is granted by this portion of § 306.19, Code, 1971:

In the maintenance, relocation, establishment, or improvement of any road, including the extension of such road within cities and towns, the commission or board having jurisdiction and control of such road shall have authority to purchase or to institute and maintain proceedings for the condemnation of the necessary right of way therefor. Such board or commission shall likewise have power to purchase or institute and maintain proceedings for the condemnation of land necessary for highway drainage.

. . .

In seeking to acquire an easement for a channel change in Cherry Creek, the Commission would not be condemning for "right of way." The Commission contends the condemnation would be "of land necessary for highway drainage."

The landowners dispute the contention, claiming that "highway drainage" does not encompass channel changes on private land and, in any event, that this condemnation is not in fact for draining the highway but rather for eliminating a bridge.

We may assume without deciding that this condemnation is in fact for draining the highway. The problem is whether the Commission's basic power of eminent domain extends to condemnation for changing the course of a stream on private property.

The legislature is not unaware of this type of situation. With reference to the powers of boards of supervisors, the legislature provided in § 306.27, Code, 1971:

Boards of supervisors on their own motion may change the course of any part of any secondary road or stream, watercourse, or dry run, within any county in order to avoid the construction and maintenance of bridges, or to avoid grades, or railroad crossings, or to straighten any secondary road, or to cut off dangerous corners, turns, or intersections on the highway, or to widen any secondary road above statutory width, or for the purpose of preventing the encroachment of a stream, watercourse, or dry run upon such highway.

And see §§ 471.6, 471.13 (similar power by railroads under some circumstances).

We find no corresponding statutory authorization to the Commission, and counsel have not cited any.

■ The possession of authority by one administrative body and the absence of a grant of such authority in the statute relating to another administrative body significantly shows that the latter body possesses no such authority. Federal Trade Comm. v. Bunte Bros., 312 U.S. 349, 61 S. Ct. 580, 85 L.Ed. 881. See also 82 C.J.S. Statutes § 366 at 813 ("where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed"); 50 Am.Jur. Statutes § 244 at 239 ("a statute that directs a thing be done in a particular manner, or by certain persons or entities, ordinarily implies that it shall not be done in

any other manner, or by other persons or entities"). In addition, the general principle obtains that the Commission, like other administrative agencies, does not possess common law or inherent powers, but only the powers which are conferred by statute. Merchants Motor Freight v. State Highway Comm., 239 Iowa 888, 32 N.W.2d 773.

In view of the absence of a statute providing that the Commission may condemn to change the course of a stream upon private lands, and of the express statutory grant of authority to boards of supervisors and railroads, we hold that the Commission has no authority so to do. We cannot amend § 306.19 to grant the Commission such authority. The amendment, if there is to be an amendment, must come from the legislature.

■ The permit from the Natural Resources Council does not confer power of eminent domain on the Commission. The seat of that power is in the legislature, not in the Council, and the grant of the power proceeds by statute. R & R Welding Supply Co. v. Des Moines, 256 Iowa 973, 129 N.W.2d 666. The Council's authority here is negative in nature, not affirmative. Without a permit from the Council, the Commission might not have been able to go forward. Code, 1971, ch. 455A. But with a permit from the Council, the Commission still could not proceed without possessing the power of eminent domain. See Geiger v. McMahon, 31 S.D. 95, 139 N.W. 958.

The result is that the Commission cannot make the channel change. We do not intimate that the Commission's purported condemnation of only a temporary easement would or would not be sufficient, if the Commission had power to condemn.

The trial court properly issued the writ. See Hoover v. Iowa State Highway Comm., 207 Iowa 56, 222 N.W. 438.

Affirmed.